IN THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| A.M, A.M., M.M., AND R.M., | ) | |
| INDIVIDUALLY AND | ) | |
| ON BEHALF OF ALL OTHERS | ) | |
| SIMILARLY SITUATED, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No: |
| v. | ) | |
| | ) | |
| SOUTHSTATE BANK, N.A. | ) | |
| Serve Registered Agent: | ) | |
|    Office of General Counsel | ) | |
|    SouthState Bank, N.A. | ) | |
|    1951 8th St. NW | ) | |
|    Winter Haven, FL 33881 | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT FOR DAMAGES

COME NOW A.M., A.M., M.M., and R.M. ("Plaintiffs"), individually and on behalf of all individuals who are similarly situated and bring this Class Action Complaint for Damages against Defendant SouthState Bank, N.A. (hereinafter sometimes referred to as "Defendant" and/or "SouthState"), and respectfully states and alleges as follows:

## NATURE OF THE CASE

1.     This is a class action brought by Plaintiffs, individually and on behalf of all individuals who are similarly situated (*i.e.*, the Class Members), seeking to redress Defendant's willful and reckless violations of their privacy rights.  Plaintiffs and the other Class Members are clients of SouthState who entrusted their personally identifiable information ("PII") to Defendant. Defendant betrayed Plaintiffs' and the Class Members' trust by failing to properly safeguard and protect their PII in violation of Georgia common law.

2.      This action pertains to Defendant's unauthorized disclosure of the Plaintiffs' and the other Class Members' PII that occurred on or about February 7, 2024 (the "Breach").

3.      Defendant disclosed Plaintiffs' and the other Class Members' PII to unauthorized persons as a direct and/or proximate result of Defendant's failure to safeguard and protect their PII.

4.      The wrongfully disclosed PII included, *inter alia*, Plaintiffs' and the other Class Members' names, financial account numbers, and Social Security numbers..

5.      Defendant flagrantly disregarded Plaintiffs' and the other Class Members' privacy and property rights by intentionally, willfully and recklessly failing to take the necessary precautions required to safeguard and protect Plaintiffs' and the other Class Members' PII from unauthorized disclosure.  Plaintiffs' and the other Class Members' PII was improperly handled, inadequately protected, readily able to be copied by thieves, and not kept in accordance with basic security protocols. Defendant's obtaining of the information and sharing of same also represent a flagrant disregard of Plaintiffs' and the other Class Members' rights, both as to privacy and property.

6.      Plaintiffs have standing to bring this action because as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiffs have incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy and/or (ii) the additional damages set forth in detail below, which are incorporated herein by reference.

7.      Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiffs and the other Class Members at an imminent, immediate and continuing increased risk of identity theft and identity fraud.  Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, released its 2012 Identity Fraud Report ("the

Javelin Report"), quantifying the impact of data breaches. According to the Javelin Report, individuals whose PII is subject to a reported data breach—such as the Data Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft. Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported, and a high probability that criminals who may now possess Plaintiffs' and the other Class Members' PII and not yet used the information will do so at a later date or re-sell it.

8.     Plaintiffs and Class Members have also suffered and are entitled to damages for the lost benefit of their bargain with SouthState. Plaintiffs and Members of the Class paid SouthState for their services including protecting their PII. The lost benefit of the bargain is measured by the difference between the value of what Plaintiffs and the Members of the Class should have received when they paid for their services, and the value of what they actually did receive: services without adequate privacy safeguards. Plaintiffs and Members of the Class have been harmed in that they (1) paid more for privacy and confidentiality than they otherwise would have, and (2) paid for privacy protections they did not receive. In that respect, Plaintiffs and the Members of the Class have not received the benefit of the bargain and have suffered an ascertainable loss.

9.     Additionally, because of Defendant's conduct, Plaintiffs and Members of the Class have been harmed in that Defendant has breached their common law fiduciary duty of confidentiality owed to Plaintiffs and Members of the Class.

10.     Accordingly, Plaintiffs and the other Class Members seek redress against Defendant for breach of implied contract, breach of contract, invasion of privacy by the public

disclosure of private facts, common law negligence, breach of the Georgia Fair Business Practices Act, negligent training and supervision, and breach of fiduciary duty of confidentiality.

11.      Plaintiffs, individually and on behalf of the other Class Members, seeks all (i) actual damages, economic damages, punitive damages and/or nominal damages and (ii) attorneys' fees, litigation expenses, and costs.

## PARTIES, JURISDICTION, AND VENUE

12.      Plaintiff A.M. is an adult citizen of Dekalb County, Georgia who used the services of Defendant SouthState in DeKalb County, Georgia.

13.      Plaintiff A.M. is an adult citizen of Dekalb County, Georgia who used the services of Defendant SouthState in DeKalb County, Georgia.

14.      Plaintiff M.M. is the minor child of A.M. and A.M., and citizen of Dekalb County, Georgia who used the services of Defendant SouthState in DeKalb County, Georgia.

15.      Plaintiff R.M. is the minor child of A.M. and A.M., and citizen of Dekalb County, Georgia who used the services of Defendant SouthState in DeKalb County, Georgia.

16.      Defendant SouthState Bank, N.A. is a domestic corporation organized under the laws of the State of Florida. Defendant SouthState Bank, N.A. maintains its principle place of business in the State of Florida.

17.      Defendant SouthState Bank, N.A. may be served with Summons and Complaint through its registered agent Office of General Counsel, SouthState Bank, N.A., 1951 8th St. NW, Winter Haven, Florida 33881.

18.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d) because there are more than 100 Class Members, at

least one class member is a citizen of a state different from that of Defendant, and the amount in controversy exceeds $5 million, exclusive of interest and costs.

19.     Venue is likewise proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant conducts much of their business in this District and Defendant has caused harm to Class Members residing in this District.

## BACKGROUND FACTS

20.     Certain allegations are made upon information and belief.

21.     Defendant SouthState is a regional bank pursuant to state and federal law, providing consumer, commercial, mortgage, and wealth management services to the general public. Defendant operates approximately 240 branches in Alabama, Florida, Georgia, North Carolina, South Caroline, and Virginia, and maintains its "main office" at 1101 1st St. South, Ste. 202, Winter Haven, FL 33881.

22.     As a part of its operations, Defendant collects and maintains PII of its clients.

23.     Plaintiffs and Class Members, as clients of Defendant, provided their PII to Defendant.

24.     Plaintiffs and Class Members entered into an implied contract with Defendant for the adequate protection of their PII.

25.     Defendant is required to maintain the strictest privacy and confidentiality of Plaintiffs' and the proposed Class Members' PII.

26.     Defendant SouthState posts its privacy practices online through their SouthState Online Privacy Policy, located at https://www.southstatebank.com/global/help/online-privacy-policy, respectively.

27.     On approximately February 7, 2024, a criminal actor gained access to one of Defendant's servers containing PII of Plaintiffs and Class Members.

28.     Defendant notified Plaintiffs of a Breach via a letter dated March, 29, 2024. In part, the letter stated, "A cybersecurity firm was engaged to assist in an investigation. That investigation determined that there was unauthorized access to certain folders in our network on February 7, 2024."

29.     Defendant did not complete their investigation of the disclosure until at least March 13, 2024, more than a month after the initial breach. Plaintiffs' and Class Members' PII was irretrievably allowed to be disseminated ("the Breach").

30.     Defendant's Breach Letter further stated, "[w]e reviewed the files in those folders, and on March 13, 2024, determined that one or more files contained your name, financial account number, and Social Security number."

31.     Defendant's breach of Plaintiffs' and Class Members' information has exposed Plaintiffs and Class Members to a wide variety of extrinsic threats.

32.     The privacy of Plaintiffs and all of the Class Members has been destroyed.

33.     The disclosure of the PII at issue was a result of the Defendant's inadequate safety and security protocols governing PII.

34.     As a direct and/or proximate result of Defendant's failure to properly safeguard and protect the PII of its customers, Plaintiffs' and the other Class Members' PII was stolen, compromised, and wrongfully disseminated without authorization.

35.     Defendant had a duty to its clients to protect them from wrongful disclosures.

36.     Defendant failed to provide proper or timely notice to Plaintiffs of the disclosure.

37.     Defendant failed to conduct or improperly conducted the four-factor risk assessment following the unauthorized disclosure.

38.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, the criminal(s) and/or their customers now have Plaintiffs' and the other Class Members' compromised PII.

39.     There is a robust international market for the purloined PII.  Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiffs and the other Class Members at an imminent, immediate and continuing increased risk of identity theft, identity fraud[1].

40.     Identity theft occurs when someone uses an individual's PII, such as the person's name, Social Security number, or credit card number, without the individual's permission, to commit fraud or other crimes. *See* Federal Trade Commission, Fighting Back against Identity Theft,  http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/  about-identity-theft.html  (last visited Jan. 18, 2013).  The Federal Trade Commission estimates that the identities of as many as nine million Americans are stolen each year. *Id.*

41.     The Federal Trade Commission correctly sets forth that "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit." *Id.*

---

[1]     According to the United States Government Accounting Office (GAO), the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities.  Identity theft occurs when PII is used to commit fraud or other crimes. These crimes include, *inter alia,* credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services).

42.     Identity theft crimes often involve more than just crimes of financial loss, such as various types of government fraud (such as obtaining a driver's license or official identification card in the victim's name but with their picture), using a victim's name and Social Security number to obtain government benefits and/or filing a fraudulent tax return using a victim's information. Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments and/or obtain other services in a victim's name.  Identity thieves also have been known to give a victim's PII to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.

43.     According to the FTC, "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[2]  Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[3]

44.     According to the Javelin Report, in 2011, the mean consumer cost of rectifying identity fraud was $354 while the mean resolution time of identity fraud was 12 hours.  *Id.* at 6. In 2011, the consumer cost for new account fraud and existing non-card fraud increased 33% and 50% respectively.  *Id.* at 9.   Consumers who received a data breach notification had a fraud incidence rate of 19% in 2011 and, of those experiencing fraud, 43% reported their credit card numbers were stolen and 22% of the victims reported their debit card numbers were stolen.  *Id.* at

---

[2]  *Protecting Consumer Privacy in an Era of Rapid Change* FTC, Report March 2012 (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf).

[3]  *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers*, *Preliminary FTC Staff Report*, 35-38 (Dec. 2010), *available at* http://www.ftc.gov/os/2010/12/101201privacyreport.pdf; *Comment of Center for Democracy & Technology,* cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11-12.

10.  More important, consumers who were notified that their PII had been breached were 9.5 times more likely to experience identity fraud than consumers who did not receive such a notification. *Id.* at 39.

45.     The unauthorized disclosure of a person's Social Security number can be particularly damaging since Social Security numbers cannot be easily replaced like a credit card or debit card.  In order to obtain a new Social Security number, a person must show evidence that someone is using the number fraudulently or is being disadvantaged by the misuse.  *See* Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007, ICN 46327 (http://www.ssa.gov/pubs/10064.html).  Thus, a person whose PII has been stolen cannot obtain a new Social Security number until the damage has already been done.

46.     Obtaining a new Social Security number also is not an absolute prevention against identity theft. Government agencies, private businesses and credit reporting companies likely still have the person's records under the old number, so using a new number will not guarantee a fresh start.  For some victims of identity theft, a new number may actually create new problems; because prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

47.     Defendant flagrantly disregarded and/or violated Plaintiffs' and the other Class Members' privacy and property rights, and harmed them in the process, by not obtaining Plaintiffs' and the other Class Members' prior written consent to disclose their PII to any other person—as required by laws, regulations, industry standards and/or internal company standards.

48.     Defendant flagrantly disregarded and/or violated Plaintiffs' and the other Class Members' privacy and property rights, and harmed them in the process, by failing to safeguard

and protect and, in fact, wrongfully disseminating Plaintiffs' and the other Class Members' PII to unauthorized persons.

49.     Upon information and belief, Defendant flagrantly disregarded and/or violated Plaintiffs' and the other Class Members' privacy and property rights, and harmed them in the process, by failing to keep or maintain an accurate accounting of their PII wrongfully disclosed in the Breach.

50.     Defendant flagrantly disregarded and/or violated Plaintiffs' and the other Class Members' privacy rights, and harmed them in the process, by failing to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiffs' and the other Class Members' PII to protect against anticipated threats to the security or integrity of such information.  Defendant's unwillingness or inability to establish and maintain the proper information security procedures and controls is an abuse of discretion and confirms its intentional and willful failure to observe procedures required by law, industry standards and/or their own internal policies and procedures.

51.     The actual harm and adverse effects to Plaintiffs and the other Class Members, including the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud directly and/or proximately caused by Defendant's above wrongful actions and/or inaction and the resulting Breach requires Plaintiffs and the other Class Members to take affirmative acts to recover their peace of mind, and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial

accounts—for which there is a financial and temporal cost.  Plaintiffs and the other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

52.     Victims and potential victims of identity theft and identity fraud—such as Plaintiffs and the other Class Members—typically spend hundreds of hours in personal time and hundreds of dollars in personal funds to resolve credit and other financial issues resulting from data breaches. *See Defend: Recover from Identity Theft*, http://www.ftc.gov/bcp/edu/microsites/idtheft//consumers/defend.html; *Fight Identity Theft*, www.fightidentitytheft.com.   According to the Javelin Report, not only is there a substantially increased risk of identity theft and identity fraud for data breach victims, those who are further victimized by identity theft or identity fraud will incur an average fraud-related economic loss of $1,513 and incur an average of $354 of out-of-pocket expenses attempting to rectify the situation. *Id*. at 6.

53.     Other statistical analyses are in accord.  The GAO found that identity thieves use PII to open financial accounts and payment card accounts and incur charges in a victim's name.  This type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft, in the meantime causing significant harm to the victim's credit rating and finances.  Moreover, unlike other PII, Social Security numbers are incredibly difficult to change and their misuse can continue for years into the future.  The GAO states that victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

54.     Defendant's wrongful actions and/or inaction directly and/or proximately caused the theft and dissemination into the public domain of Plaintiffs' and the other Class Members' PII without their knowledge, authorization and/or consent. As a direct and/or proximate result of

Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiffs and the other Class Members have incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy, (ii) the imminent, immediate and continuing increased risk of identity theft and/or identity fraud, (iii) out-of-pocket expenses to purchase credit monitoring, internet monitoring, identity theft insurance and/or other Breach risk mitigation products, (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach, including the costs of placing a credit freeze and subsequently removing a credit freeze, (v) the value of their time spent mitigating the increased risk of identity theft and/or identity fraud pressed upon them by the Breach and (vi) the lost benefit of their bargain when they paid for their privacy to be protected and it was not

## CLASS ACTION ALLEGATIONS

55.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of himself and the following proposed Nationwide class, defined as follows:

**All individuals whose PII was accessed on the servers of SouthState between approximately February 7, 2024 and March 13, 2024.**

56.     On information and belief, the putative Class is comprised of thousands of individuals making joinder impracticable. Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

57.     The rights of Plaintiffs and each other Class Member were violated in a virtually identical manner as a direct and/or proximate result of Defendant's willful, reckless and/or negligent actions and/or inaction and the resulting Breach.

58.     Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class Members including, *inter alia*:

a.      Whether Defendant willfully, recklessly and/or negligently failed to maintain and/or execute reasonable procedures designed to prevent unauthorized access to Plaintiffs' and the other Class Members' PII;

b.      Whether Defendant was negligent in failing to properly safeguard and protect Plaintiffs' and the other Class Members' PII;

c.      Whether Defendant owed a duty to Plaintiffs and the other Class Members to exercise reasonable care in safeguarding and protecting their PII;

d.      Whether Defendant breached their duty to exercise reasonable care in failing to safeguard and protect Plaintiffs' and the other Class Members' PII;

e.      Whether Defendant was negligent in failing to safeguard and protect Plaintiffs' and the other Class Members' PII;

f.      Whether, by publicly disclosing Plaintiffs' and the other Class Members' PII without authorization, Defendant invaded their privacy; and

g.      Whether Plaintiffs and the other Class Members sustained damages as a result of Defendant's failure to safeguard and protect their PII.

59.     Plaintiffs and their counsel will fairly and adequately represent the interests of the other Class Members.  Plaintiffs have no interests antagonistic to, or in conflict with, the other Class Members' interests.  Plaintiffs' lawyers are highly experienced in the prosecution of multi-party litigation, consumer class actions, and data breach cases.

60.     Plaintiffs' claims are typical of the other Class Members' claims in that Plaintiffs' claims and the other Class Members' claims all arise from Defendant's failure to properly safeguard and protect their PII.

61.     A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiffs' and the other Class Members' claims.  Plaintiffs and the other Class Members have been harmed as a result of Defendant's wrongful actions and/or inaction and the

resulting Breach.  Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct.

62.     The prosecution of separate actions by or against individual members of the class would create a risk of: (A)Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class;  and (B)Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. O.C.G.A §9-11-23.

63.     Class certification, therefore, is appropriate pursuant to Federal Rule of Civil Procedure 23(a)(2) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

64.     The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights. Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law.

**COUNT I**
**BREACH OF FIDUCIARY DUTY OF CONFIDENTIALITY**

65.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶1-64 of this Complaint with the same force and effect as if fully set forth herein.

66.     At all times relevant hereto, Defendant owed, and owe, a fiduciary duty to Plaintiffs and the proposed class pursuant to Georgia common law, to keep Plaintiffs' and Class Members' PII information confidential.

67.     The fiduciary duty of privacy imposed by Georgia law is explicated under the procedures set forth in the Health Insurance Portability and Accountability Act Privacy Rule,

including, without limitation the procedures and definitions of 45 C.F.R. §160.103 and 45 C.F.R. §164.530 which requires a covered entity, health care provider, to apply appropriate administrative, technical, and physical safeguards to protect the privacy of private information.

68.     Defendant breached their fiduciary duty to Plaintiffs and Class Members by disclosing Plaintiffs' and the other Class Members' PII to unauthorized third parties.

69.     As a direct result of Defendant's breach of fiduciary duty of confidentiality and the disclosure of Plaintiffs' and Class Members' confidential private information, Plaintiffs and the proposed Class Members suffered damages.

70.     Plaintiffs and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft; and, (vii) emotional distress.  At the very least, Plaintiffs and the other Class Members are entitled to nominal damages.

71.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiffs' and the Class Members' confidential personal information, Plaintiffs and the Members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

## COUNT II
## BREACH OF IMPLIED CONTRACT

72.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶1-71 of this Complaint with the same force and effect as if fully set forth herein.

73.     Defendant posts their privacy practices online located at: https://www.southstatebank.com/global/help/online-privacy-policy.

74.     Defendant's notice constitutes an agreement between Defendant and Plaintiffs and the proposed Class Members.

75.     Plaintiffs and Class Members, as clients of Defendant, provided their PII to Defendant and/or had it created through being consumers of Defendant.

76.     In providing their PII, Plaintiffs and the other Class Members entered into an implied contract with Defendant, whereby Defendant became obligated to reasonably safeguard Plaintiffs' and the other Class Members' PII.

77.     Under the implied contract, Defendant was obligated to not only safeguard the PII, but also to provide Plaintiffs and Class Members with prompt, adequate notice of any Data Breach or unauthorized access of said information.

78.     Plaintiffs and Class Members have been damaged by Defendant's breach of their obligations because they paid for privacy protection that they did not receive and because they are now more susceptible to future identify theft and fraudulent activity.

79.     The overpayment for privacy protections stemmed directly from Defendant's deception or misrepresentation that privacy would be protected.

80.     The overpayment represents a monetary difference between the value paid for the services and the value received by Plaintiffs and the other Class Members.

81.     The cost assessed to Plaintiffs and the other Class Members by Defendant

16

represented a price set by Defendant inclusive of the costs associated with maintaining individual's privacy.  Plaintiffs paid costs of services to Defendant which ultimately included the cost of maintaining privacy with the belief and understanding that Defendant would be providing privacy as outlined in its policies and procedures and as instructed by State and Federal law.

82.    Defendant breached the implied contract with Plaintiffs and the other Class Members by failing to take reasonable measures to safeguard their PII.

83.    Plaintiffs and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress.  At the very least, Plaintiffs and Class Members are entitled to nominal damages.

84.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiffs' and the Members of the Class confidential private information, Plaintiffs and the Members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

**COUNT III**
**NEGLIGENCE**

85.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶1-84 of this Complaint with the same force and effect as if fully set forth herein.

86.     Defendant owed a duty to Plaintiffs and the other Class Members to safeguard and protect their PII.

87.     Defendant breached their duty by failing to exercise reasonable care and failing to safeguard and protect Plaintiffs' and the other Class Members' PII.

88.     It was reasonably foreseeable that Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and the other Class Members' PII would result in an unauthorized third-party gaining access to such information for no lawful purpose.

89.     Plaintiffs and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft; and, (vii) emotional distress.  At the very least, Plaintiffs and the other Class Members are entitled to nominal damages.

90.     As a direct result of Defendant's breach of their duty of confidentiality and privacy and the disclosure of Plaintiffs' and the Members of the Class confidential private information, Plaintiffs and the Members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

91.     Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) negligence at common law.

## COUNT IV
## INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

92.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶1-91 of this Complaint with the same force and effect as if fully set forth herein.

93.     Plaintiffs' and the other Class Members' PII was (and continues to be) sensitive and personal private information.

94.     By virtue of Defendant's failure to safeguard and protect Plaintiffs' and the other Class Members' PII and the resulting Breach, Defendant wrongfully disseminated Plaintiffs' and the other Class Members' PII to unauthorized persons.

95.     Dissemination of Plaintiffs' and the other Class Members' PII is not of a legitimate public concern; publicity of their PII was, is and will continue to be offensive to Plaintiffs, the other Class Members and all reasonable people. The unlawful disclosure of same violates public mores.

96.     Plaintiffs and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft; and, (vii) emotional distress.

97.     Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) an invasion of Plaintiffs' and the other Class Members' privacy by publicly and wrongfully disclosing their private facts (*i.e.*, their PII) without their authorization or consent.

98.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiffs' and the Members of the Class confidential private information, Plaintiffs and the Members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

### COUNT V
### VIOLATIONS OF GEORGIA FAIR BUSINESS PRACTICES ACT
### O.G.C.A. § 10-1-393 *et seq.*

99.     Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶1-98 of this Complaint with the same force and effect as if fully set forth herein.

100.    The Georgia Fair Business Practices Act (GFBPA), O.G.C.A. §10-1-393 *et seq* prohibits the use of any "unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce."

101.    Defendant engaged in and its acts and omissions affecting trade and commerce under O.C.G.A. §10-1-393(28).  Further, Defendant is engaged in "consumer acts or practices," which are defined as "acts or practices intended to encourage consumer transactions" under O.C.G.A. §10-1-392(7).

102.    Defendant engages in "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" in violation of O.C.G.A. §10-1-393(a).  Those acts and practices include those expressly declared unlawful by O.C.G.A §10-1-393(b), such as:

    a.   Representing that goods or services have characteristics that they do not have;

    b.   Representing that goods or services are of a particular standard, quality, or grade if they are of another; and,

c.  Advertising goods or services with intent not to sell them as advertised.

103.   Plaintiffs, including Class Members, and Defendant are "persons" within the meaning of section O.C.G.A. §10-1-392(24).

104.   In the course of their business, Defendant engaged in unfair acts and practices prohibited by O.C.G.A. § 10-1-393(a), including:

a.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class Members' PII;

b.  Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, adequately improve security and privacy measures, and detect and redress the disclosure while it was ongoing; and

c.  Failing to comply with common law and statutory duties pertaining to the security.

105.   In the course of its business, Defendant also engaged in deceptive acts and practices prohibited by O.C.G.A. § 10-1-393(a), including:

a.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Class Members' PII, including by implementing and maintaining reasonable security measures; and,

b.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class Members' PII.

106.   As set forth herein, Defendant's acts, practices and conduct violate the GFBPA in that, among other things, Defendant has used and/or continues to use unfair practices, concealment, suppression and/or omission of material facts in connection with the advertising, marketing, and

offering for sale of services associated with healthcare services. Such acts offend the public policy established by Georgia statute and constitute an "unfair practice" as that term is used in GFBPA.

107.    Defendant's unfair, unlawful and deceptive acts, practices and conduct include: (1) representing to their clients that they will not disclose their sensitive protected health information to an unauthorized third party or parties; (2) failing to implement security measures such as securing the records in a safe place; and (3) failing to train personnel.

108.    Defendant's conduct also violates the enabling regulations for the GFBPA because it: (1) offends public policy; (2) is unethical, oppressive, and unscrupulous; (3) causes substantial injury to consumers; (4) it is not in good faith; (5) is unconscionable; and (6) is unlawful.

109.    As a direct and proximate cause of Defendant's unfair and deceptive acts, Plaintiffs and Members of the Class have suffered damages in that they (1) paid more for privacy protections than they otherwise would have, and (2) paid for privacy protections that they did not receive.  In this respect, Plaintiffs and Members of the Class have not received the benefit of the bargain and have suffered an ascertainable loss.

110.    As a direct result of Defendant's breach of their duty of confidentiality and privacy and the disclosure of Plaintiffs' and the Members of the Class confidential private information, Plaintiffs and the Members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

111.    Plaintiffs, on behalf of themselves and the Class, seeks actual damages for all monies paid to Defendant in violation of the GFBPA.  In addition, Plaintiffs seek attorneys' fees.

## COUNT VI
## NEGLIGENT TRAINING AND SUPERVISION

112.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶1-111 of this Complaint with the same force and effect as if fully set forth herein.

113.    At all times relevant hereto, Defendant owes a duty to Plaintiffs and the Class to hire competent employees, and to train and supervise them to ensure they recognize the duties owed to their citizens.

114.    Defendant breached its duty to Plaintiffs and Class Members by allowing its employees to give access to personal information to an unauthorized user.

115.    As a direct and proximate cause of Defendant's negligent hiring and supervision, Plaintiffs and Members of the Class have suffered damages in that they (1) paid more for privacy protections than they otherwise would have, and (2) paid for privacy protections that they did not receive.  In this respect, Plaintiffs and Members of the Class have not received the benefit of the bargain and have suffered an ascertainable loss.

116.    Plaintiffs and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; and (vi) the increased risk of identity theft; and, (vii) emotional distress.

117.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiffs' and the Members of the Class confidential private information, Plaintiffs and the Members of the Class suffered damages, including, without limitation, loss of

the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

## COUNT VII
## PUNITIVE DAMAGES

118.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in ¶¶1-117 of this Complaint with the same force and effect as if fully set forth herein.

119.    At all times relevant, Defendant owed a duty to refrain from willful and wanton misconduct and/or conduct which exhibited an indifference and/or conscious disregard to the health, safety, and well-being of Plaintiffs and Class Members.

120.    The conduct of Defendant as set forth herein showed willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of a conscious indifference to consequences. Accordingly, punitive damages should be imposed against each defendant pursuant O.C.G.A. § 51-12-5.1 and other applicable laws, to punish and deter each Defendant from repeating or continuing such unlawful conduct.

## PRAYER

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the Class proposed in this Complaint, pray:

   a.   That process issue according to law;

   b.   That the Defendant be served with a copy of Plaintiffs' Complaint and show cause why the prayers for relief requested by Plaintiffs herein should not be granted;

   c.   That Plaintiffs be granted a trial by jury in this matter;

   d.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiffs as Class Representatives and appointing Plaintiffs' counsel as Lead Counsel for the Class;

e.  Declaring that Defendant breached their fiduciary duty to Plaintiffs and the Class Members;

f.  Declaring that Defendant breached their implied contract with Plaintiffs and Class Members;

g.  Declaring that Defendant negligently disclosed Plaintiffs' and the Class Members PII;

h.  Declaring that Defendant has invaded Plaintiffs' and Class Members' privacy;

i.  Declaring that Defendant breached their contracts with Plaintiffs and the Class Members;

j.  Declaring that Defendant violated the Georgia Fair Business Practices Act;

k.  Declaring that Defendant were negligent by negligently hiring, training and supervising their employees;

l.  Ordering Defendant to pay actual damages to Plaintiffs and the Class Members;

m.  Ordering Defendant to pay punitive damages to Plaintiffs and the Class Members;

n.  Ordering Defendant to disseminate individualized notice of the Breach to all Class Members;

o.  Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiffs;

p.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

q.  Ordering such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs, on behalf of themselves and the other Class Members, respectfully demands a trial by jury on all of his claims and causes of action so triable.

25

Respectfully submitted this 17ᵗʰ day of April, 2024.

ZINNS LAW, LLC

_____
Sharon J. Zinns, Esq.
Georgia Bar No. 552920
4243 Dunwoody Club Drive
Suite 104
Atlanta, GA 30350
(404) 882-9002
Email: sharon@zinnslaw.com

_____
Maureen M. Brady MO#57800
(*to be admitted pro hac vice*)
Lucy McShane MO#57957
(*to be admitted pro hac vice*)
MCSHANE & BRADY, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Phone:  (816) 888-8010
E-mail: mbrady@mcshanebradylaw.com
lmcshane@mcshanebradylaw.com

**ATTORNEYS FOR PLAINTIFFS**